No. 24-7617

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

CHAL MCCOLLOUGH,

*Plaintiff-Appellant*,

v.

PORTLAND STATE UNIVERSITY, ET AL.

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Oregon, Portland Division,
No. 3:23-cv-01582-AR
Hon. Judge Michael H. Simon

_____

**APPELLEES' ANSWERING BRIEF**

_____

Erin M. Burris, OSB No. 155379
MILLER NASH LLP
1140 SW Washington St, Ste 700
Portland, Oregon  97205
Telephone:  (503) 224-5858
E-mail:  erin.burris@millernash.com

*Attorney for Appellees
Portland State University and
Susan Jeffords*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................1

II.    STATEMENT OF JURISDICTION ...........................................2

III.   ISSUES PRESENTED ................................................................3

IV.   STATEMENT OF THE CASE ....................................................6

    A.    Facts Relevant to Issues on Review .......................................6

    B.    Procedural History Relevant to Issues on Review ...............9

V.     SUMMARY OF ARGUMENT...................................................11

VI.   ARGUMENT...............................................................................12

    A.    Standards of Review...............................................................12

    B.    The District Court Correctly Dismissed Appellant's Amended
         Complaint for Failure to State a Claim Under Rule 12(b)(6) ...........13

        1.   The District Court correctly dismissed Appellant's First
             Amendment claims against Appellees ....................................13

            a.   Appellant's First Amendment claims against PSU
                fail because PSU has Eleventh Amendment
                immunity...................................................................14

            b.   Appellant's First Amendment-retaliation claim
                against Jeffords fails because Jeffords has qualified
                immunity...................................................................16

            c.   Appellant's First Amendment-retaliation claim
                lacks sufficient allegations to state a claim for
                relief.........................................................................19

        2.   The District Court properly dismissed Appellant's
             Fourteenth Amendment Substantive Due Process claims
             against Appellees ....................................................................21

            a.   PSU has Eleventh Amendment immunity....................23

            b.   Appellant's Fourteenth Amendment Claim Fails
                Against Jeffords.........................................................23

i

**TABLE OF CONTENTS**
(continued)

Page

c.    Jeffords has qualified immunity ...................................24

3.    The District Court properly dismissed Appellant's ADA claims against PSU...................................................................26

    a.    Appellant did not allege a claim that PSU discriminated against Appellant during the student conduct process.............................................................28

    b.    Appellant did not allege a claim that PSU failed to accommodate him during the student conduct process ................................................................29

    c.    Appellant did not allege a claim that PSU discriminated against Appellant by charging tuition to retake classes...................................................30

    d.    Appellant did not allege a disparate-impact discrimination claim against PSU ...............................31

C.    Appellant's Other Alleged District Court Errors Are Unfounded.....34

    1.    The District Court correctly denied Appellant's recusal motions.................................................................................34

    a.    Appellant's Recusal Motion—Magistrate Judge Armistead...............................................................35

    b.    Appellant's Recusal Motion—Judge Simon .................35

    2.    The District Court correctly denied leave to amend................36

D.    Appellant's New Claims Cannot be Raised for the First Time on Appeal and are Nevertheless Insufficient .....................................37

    1.    Appellant's religious-discrimination claims under Title VII, FEHA, and ORS 659.850 were not raised to the District Court and the allegations do not state a claim ...........37

    2.    Appellant's Privileges and Immunities Claim under the Oregon Constitution was not raised to the District Court and the allegations do not state a claim .................................40

# TABLE OF CONTENTS
(continued)

                                                                                                      **Page**

**VII.  CONCLUSION** ......................................................................................**41**

**STATEMENT OF RELATED CASES**...............................................................**43**

**CERTIFICATE OF COMPLIANCE** .................................................................**44**

**CERTIFICATE OF SERVICE** ..........................................................................**45**

iii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfano v. Farley*,
No. 3:12-cv-2319-PK, 2014 WL 2041137 (D. Or. Apr. 29, 2014)..............23, 26

*Andrews v. Treasure Valley Comm. Coll.*,
No. 2:19-cv-01314-SU, 2020 WL 1678050 (D. Or. Mar. 18, 2020) .................25

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)................................................................................16, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................3, 12

*Bolden-Hardge v. Office of Calif. State Controller*,
63 F. 4th 1215 (9th Cir. 2023) ..................................................................6, 38

*Brainard v. Western Or. Univ.*,
No. 3:17-cv-0253-SI, 2017 WL 1534191 (D. Or. Apr. 26, 2017)......................14

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*,
806 F.3d 451 (9th Cir. 2015) ...........................................................................27

*Castillo v. McFadden*,
399 F.3d 993 (9th Cir. 2005) ........................................................................5, 21

*Chappell v. Mandeville*,
706 F.3d 1052 (9th Cir. 2013) ........................................................................17

*Chodos v. W. Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002) .......................................................................4, 36

*City & Cnty. of San Francisco v. Sheehan*,
575 U.S. 600 (2015)...........................................................................................16

*City of Escondido v. Emmons*,
586 U.S. 38 (2019)..............................................................................................16

iv

# TABLE OF AUTHORITIES
(continued)

**Page**

*Cornel v. Hawaii*,
 37 F.4th 527 (9th Cir. 2022) ...................................................................23

*Csutoras v. Paradise High Sch.*,
 12 F.4th 960 (9th Cir. 2021) .................................................................30

*Davis v. Shah*,
 821 F.3d 231 (2d Cir. 2016) .................................................................27

*Doe v. Or. State Univ.*,
 614 F. Supp. 3d. 847 (D. Or. 2022) ...............................................15, 24

*Doe v. Univ. of Or.*,
 No. 6:17-cv-01103-AA, 2018 WL 1474531 (D. Or. Mar. 26, 2018)..............24

*Doe v. White*,
 440 F. Supp. 3d 1074 (N.D. Cal. 2020)...............................................24

*Duvall v. Cnty. of Kitsap*,
 260 F.3d 1124 (9th Cir. 2001) .......................................................27, 30

*Fields v. Twitter, Inc.*,
 881 F.3d 739 (9th Cir. 2018) ...............................................................12

*Gutta v. Sedgwick Claims Mgmt. Servs., Inc.*,
 No. 3:22-cv-01145-HZ, 2023 WL 22182 (D. Or. Jan. 1, 2023)..................3

*Hafer v. Melo*,
 502 U.S. 21 (1991).................................................................................15

*Hagel v. Portland State Univ.*,
 237 Fed. App'x. 146 (9th Cir. 2007) ...................................................15

*Hunter v. Bryant*,
 502 U.S. 224 (1991)...............................................................................18

v

# TABLE OF AUTHORITIES
(continued)

**Page**

*Jefferson v. Time Warner Cable Enterprises, LLC,*
   584 Fed.Appx. 520 (9th Cir. 2014).................................................................5, 33

*Jorgensen v. Cassiday,*
   320 F.3d 906 (9th Cir. 2003) .............................................................................13

*Koala v. Khosla,*
   931 F.3d 887 (9th Cir. 2019) .............................................................................21

*Komatsu, Ltd. v. States Steamship Co.,*
   674 F.2d 806 (9th Cir. 1982).............................................................................13

*Liu v. Portland State Univ.,*
   281 Or. App. 294 (2016)...............................................................10, 20, 35

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir. 2000) (en banc) .........................................................13

*Mabe v. San Bernardino Cnty., Dep't of Public Social Servs.,*
   237 F.3d 1101 (9th Cir. 2001) ..........................................................................32

*Mark H. v. Hamamoto,*
   620 F.3d 1090 (9th Cir. 2010) ..........................................................................29

*McQuillion v. Schwarzenegger,*
   369 F.3d 1091 (9th Cir. 2004) ................................................................4, 13, 36

*Mobley v. Workday, Inc.,*
   740 F.Supp.3d 796 (N.D. Cal. 2024)...........................................................5, 33

*Nieves v. Bartlett,*
   587 U.S. 391 (2019)...........................................................................................21

*Oyama v. Univ. of Hawaii,*
   813 F.3d 850 (9th Cir. 2015) ............................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page**

*Padgett v. Wright*,
  587 F.3d 983 (9th Cir. 2009) ...............................................................12

*Payan v. L.A. Comm. Coll. Dist.*,
  11 F.4th 729 (9th Cir. 2021) .................................................................4

*Pinard v. Clatskanie Sch. Dist. 6J*,
  467 F.3d 755 (9th Cir. 2006) ...............................................................19

*Radwan v. Manuel*,
  55 F.4th 101 (2d Cir. 2022) .................................................................18

*Robertson v. Millett*,
  No. 2:22-cv-01983, 2022 WL 16571702 (D. Ariz. Nov. 1, 2022).....................28

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) .............................................................12

*Smith v. Agdeppa*,
  81 F.4th 994 (9th Cir. 2023) ...............................................................17

*Taylor v. Sentry Life Insurance Co.*,
  729 F.2d 652 (9th Cir. 1984) ...............................................................13

*Troxel v. Granville*,
  530 U.S. 57 (2000)..............................................................................25

*Tsao v. Desert Palace, Inc.*,
  698 F.3d 1128 (9th Cir. 2001) .............................................................22

*Tuuamalemalo v. Greene*,
  946 F.3d 471 (9th Cir. 2019) ...............................................................16

*U.S. v. Robertson*,
  52 F.3d 789 (9th Cir. 1994) .......................................................32, 38, 40

**TABLE OF AUTHORITIES**
(continued)

**Page**

*U.S. v. Salerno*,
481 U.S. 739 (1987)......................................................................................22

*Weilburg v. Shapiro*,
488 F.3d 1202 (9th Cir. 2007) ....................................................................36

*Williams v. Brown*,
6:21-cv-01332-AA, 2023 WL 6379771 (D. Or. Sep 30, 2023) ..................22, 23

*Williams v. Cnty. of Los Angeles*,
No. 2:22-cv-05798-PA-AS, 2024 WL 2862587 (9th Cir. June 6,
2024) .............................................................................................................29

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ....................................................................12

*Wolff v. McDonnell*,
418 U.S. 539 (1974)......................................................................................22

*Ex Parte Young*,
209 U.S. 123 (1908).....................................................................................23

*Zukle v. Regents of Univ. of Calif.*,
166 F.3d 1041 (9th Cir. 1999) .....................................................................31

**Statutes**

28 U.S.C. § 455(b) .............................................................................4, 11, 34, 35

28 U.S.C. § 1291................................................................................................3

28 U.S.C. § 1331................................................................................................2

28 U.S.C. § 1367...............................................................................................3

42 U.S.C. § 1983 (Section 1983)................................................................2, 15, 22

viii

# TABLE OF AUTHORITIES
(continued)

**Page**

42 U.S.C. § 2000e-2(a) ...............................................................5, 38

42 U.S.C. § 12132 ...........................................................................27

Americans with Disabilities Act ...............................................*passim*

Cal Gov't Code § 12940(a)...........................................................6, 38

California Fair Employment and Housing Act (FEHA).........6, 37, 38, 39

Oregon Administrative Procedures Act (APA) ...............................1, 5, 20

ORS Chapter 183 .......................................................................3, 20

ORS Chapter 351 ...........................................................................20

ORS Chapter 352 ............................................................................3

ORS 183.417..............................................................................5, 20

ORS 183.482(1) ..............................................................................20

ORS 352.087(1)(m) .........................................................................20

ORS 659.785..................................................................................14

ORS 659.850.........................................................................6, 37, 38, 39

Rehabilitation Act of 1973 Section 504.......................................26, 27

## Other Authorities

Eleventh Amendment...................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...............................................................*passim*

Fifth Amendment ....................................................................5, 20, 21

Or. Const., Art. 1, § 20...........................................................3, 6, 32, 40, 41

## TABLE OF AUTHORITIES
(continued)

**Page**

U.S. Const. Amend. I (First Amendment) ........................................................*passim*

U.S. Const. Amend. IX (Ninth Amendment) ....................................................17, 24

U.S. Const. Amend. XIV, § 1 (Fourteenth Amendment) ................................*passim*

## I.     INTRODUCTION

Appellant's lawsuit resulted from his purported "political protest" of Portland State University's ("PSU's") COVID-19 vaccine mandate, which arose when Appellant requested a vaccine exemption stating that PSU staff are "piece of shit scumbag Democrat mother fuckers" and they should "suck [his] fucking dick." Those comments, made through PSU's standard procedure for considering vaccine exemption requests, led to a student conduct process. Appellant asserted that PSU discriminated against him on the basis of his disability during the conduct process, violating the Americans with Disabilities Act (the "ADA"). Additionally, Appellant alleged that PSU and its former employee, Susan Jeffords (together PSU and Jeffords are collectively referred to as "Appellees") violated the First Amendment by punishing his speech and violated the Fourteenth Amendment substantive due process clause by not applying a heightened evidentiary standard to the conduct process.

On appeal, Appellant seeks to recast some of his claims in a variety of ways, and particularly, that he was seeking a religious accommodation for the vaccine exemption request, that PSU owed him employment rights, and that PSU owed him a contested case hearing under the Oregon Administrative Procedures Act (the "APA"). In addition to altering his previous legal theories, Appellant also

1

attempts to assert new claims and legal theories, which should be disregarded since Appellant did not raise them to the District Court.

As to the claims Appellant asserted in the Amended Complaint, the District Court correctly dismissed all claims under Fed. R. Civ. P. 12(b)(6). Appellant did not allege sufficient facts to support any ADA claim against PSU. Furthermore, as to the constitutional claims under 42 U.S.C. § 1983 ("Section 1983"), the claims fail because no only did the Amended Complaint lack sufficient facts to sustain his claims against Appellees, but additionally, PSU is entitled to Eleventh Amendment immunity. Jeffords is entitled to qualified immunity because Appellant did not allege a violation of any clearly established right. In short, this Court should affirm the District Court's dismissal of Appellant's Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) and disregard his new legal theories.

## II.   STATEMENT OF JURISDICTION

Appellant, an Oregon resident, filed this action in the United States District Court for the District of Oregon against Appellees, alleging federal claims. The District Court had jurisdiction under 28 U.S.C. § 1331 because Appellant

alleged violations of a federal statute and the U.S. Constitution.[1] This Court

therefore has jurisdiction over the appeal under 28 U.S.C. § 1291.

### III. ISSUES PRESENTED

1. To survive a Rule 12(b)(6) motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations

omitted). A court may grant a motion under Rule 12(b)(6) "if a plaintiff alleges the

'grounds' of his 'entitlement to relief' with nothing 'more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action[.]'"

*Gutta v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:22-cv-01145-HZ, 2023 WL

22182, at *2 (D. Or. Jan. 1, 2023) (citations omitted). Did the District Court err in

dismissing Appellant's Amended Complaint—including specifically claims under

---

[1] In Appellant's Opening Brief, he asserted that he alleged claims under the "ORTCA, Oregon Constitution Article I Section 3 and 8 and 20, ORS 109.119, ORS 183, ORS 352, and PSU Code." (Opening Br. at 24 (bold text omitted)). Plaintiff further asserts that the District Court had supplemental jurisdiction under 28 U.S.C. § 1367. (Opening Br. at 24.) Since Appellant did not clearly assert claims under Oregon law in the Amended Complaint without identifying any reason for their absence, this Court need not review those claims and furthermore, the District Court did not exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any claim.

the Fourteenth Amendment, First Amendment, and the ADA—under Rule 12(b)(6)

for failure to state a claim?[2]

2.     This Court has held that dismissal without leave to amend is

proper when the pleading cannot be cured by alleging other facts. *McQuillion v.*

*Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004). District courts have wide

discretion in whether to grant a subsequent leave to amend a complaint when the

court has already provided an opportunity to amend. *Chodos v. W. Publ'g Co.*,

292 F.3d 992, 1003 (9th Cir. 2002). Did the District Court err by denying

Appellant leave to amend his Amended Complaint?

3.     Federal law provides that a judge shall disqualify themselves

under specific statutory circumstances generally reflecting that the judge may have

a personal interest in the outcome of the proceeding. *See* 28 U.S.C. § 455(b).

Did the District Court err by denying Appellant's motions seeking recusal of

District Court Magistrate Judge Jeffrey Armistead and Judge Michael Simon?

4.     The ADA prohibits disability-discrimination, including based

on a disparate impact theory. *Payan v. L.A. Comm. Coll. Dist.*, 11 F.4th 729, 738

(9th Cir. 2021). To assert a prima facie case of disparate impact under the ADA, a

plaintiff must allege facts showing that a "facially neutral policy falls more harshly

---

[2] Appellant's issues numbered 1, 4, 5, 6, 7, appear to be related to the dismissal of the claims Appellant asserted against Appellees under Rule 12(b)(6), whereas the other issues and arguments involve new claims or legal theories.

on a protected group than the whole." *Jefferson v. Time Warner Cable Enterprises, LLC*, 584 Fed.Appx. 520, 522 (9th Cir. 2014). A plaintiff must plead facts showing (1) that there exists a significant disparate impact on a protected group; (2) identify the specific practice at issue; and (3) a causal relationship between the specific practice and the disparate impact. *Mobley v. Workday, Inc.*, 740 F.Supp.3d 796, 809 (N.D. Cal. 2024) (applying Title VII disparate-impact framework to ADA claim). Did the District Court err by ruling that Appellant did not plead an ADA claim based on disparate-impact discrimination?

5.     The Oregon APA sets forth various procedures in contested case hearings pertaining to state agencies. *See* ORS 183.310, *et seq*. Separately, the Fifth Amendment to the U.S. Constitution, prohibits the federal government from depriving individuals from life, liberty, or property, without due process of law. *Castillo v. McFadden*, 399 F.3d 993, 1002, n.5 (9th Cir. 2005). Did the District Court err by ruling that Appellant did not plead a Fifth Amendment claim because Appellees allegedly did not provide Appellant notice under ORS 183.417 and by applying a certain evidentiary standard in the student conduct proceeding?

6.     Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating against employees because of their "race, color religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII requires employers to accommodate employees' "bona fide religious beliefs" that conflict

5

with an employment requirement unless doing so would impose an undue hardship on the employer. *Bolden-Hardge v. Office of Calif. State Controller*, 63 F. 4th 1215, 1222 (9th Cir. 2023). The California Fair Employment and Housing Act (the "FEHA") also imposes similar requirements on California employers. Cal Gov't Code § 12940(a). Further, ORS 659.850 also prohibits religious discrimination. Did the District Court err by ruling that Appellant did not plead a claim for religious discrimination under Title VII, FEHA, and ORS 659.850?

7.     The Oregon Constitution prohibits the passage of any law granting privileges and immunities that do not equally belong to all citizens. Or. Const., Art. 1, § 20. Did the District Court err by ruling that Appellant did not plead a claim that Appellees violated Article 1, Section 20 of the Oregon Constitution due to unequal treatment by mandating the COVID vaccine, charging tuition for retaking classes at full price, and for disciplining Appellant?

## IV.   STATEMENT OF THE CASE

Since Appellant's statement of the case is deficient, Appellees present a detailed statement of the case with the applicable standards of review in accordance with Circuit Rule 28(b).

### A.   Facts Relevant to Issues on Review.

The following facts were accepted as true by the District Court or were alleged in Appellant's Amended Complaint.

Appellant enrolled as a PSU student sometime between 2010 and 2013. (SER-223, ¶ 16.) During Appellant's "final term" of his "second stay at PSU," Appellant registered with PSU's Disability Resource Office as having a disability based on complex post-traumatic stress disorder ("CPTSD"). (SER-228, ¶ 38.) In 2021, during the COVID-19 pandemic, PSU required students to receive the COVID vaccine. (SER-230, ¶ 46.) On October 7, 2021, Appellant requested a vaccine waiver by email to PSU's vaccines@pdx.edu email account. (SER-230, ¶ 48.) Appellant's email stated: "You can go fuck yourself you piece of shit scumbag Democrat mother fuckers. Vaccine mandates are illegal. Suck my fucking dick punk. Fuck Joe Beijing Biden and Hyena Harris." (SER-230, ¶48.)

> PSU's Vaccine Service Account replied:
>
> "While we appreciate you sending in your paperwork, your email and the language used are extremely inappropriate and disruptive to our work environment, which is why we will be referring this email to the Student Conduct & Community Standards and Dean of Student Life for conduct review.
>
> You should expect outreach from their office soon. We ask that if you need to communicate with our department in the future, you do not use profanity or insults. If you fail to abide by these boundaries, you will be reported to Student Conduct & Community Standards for failing to comply with our reasonable request." (SER-230-231, ¶ 49.)

Appellant alleged that on October 11, 2021, PSU's Student Conduct Investigator, Erica Geller, found that Appellant violated PSU's Code of Student Conduct because Appellant had "disrupted the work of the employees at the University's

7

Student Health and Counseling Center." (SER-231-232, ¶ 51.) Appellant also alleged that on that day, Geller sent Appellant an invitation for a hearing. (SER-231-232, ¶ 51.) Appellant responded to Geller:

> "I'm requesting to meet with someone who doesn't have She/They in their title. You're one of those Democrats that are causing nightmares for people. I don't want to talk to you or anyone who is in the #woke mob. You want to stick and [*sic*] needle in my arm, you can kiss my ass." (SER-232, ¶ 52.)

On October 14, 2021, Geller responded:

> "Unfortunately, that is not an appropriate reason for requesting an alternate hearing officer. Additionally, we require at least 24 hours['] notice to reschedule or alter the hearing in any way, and unfortunately, we are within 24 hours of the hearing time. If you are not interested in meeting via zoom for the hearing, you are welcome to submit a written statement in lieu of your attendance. The written statement should address the charges, whether you believe you are responsible/not responsible for the alleged violation in your hearing letter, and you[r] reasoning. For your convenience, I've attached the hearing letter with the charge information included."

(SER-232, ¶ 53.)

On October 14, 2021, Appellant provided a written statement stating his objections to the COVID vaccine and "[s]hit-bag punk Democrats." (SER-232-233, ¶ 54.) On October 19, 2021, Geller informed Appellant that Geller denied Appellant's petition and blocked Appellant's ability to register for classes. (SER-234, ¶ 55.)

8

Appellant appealed the violation of the Code of Student Conduct, stating that he was "falsely accused of violating the bullshit Code of Conduct while [he] was engaging in political protest" of "the Mark of the Beast" mandate and that PSU had violated his free speech because PSU did not apply a clear and convincing evidence standard. (SER-234, ¶ 56.) Appellant's appeal also included a "long political protest." (SER-234, ¶ 56.)

On February 11, 2022, Appellant learned that his appeal was denied by Susan Jeffords, the "head of the PSU Code of Student Conduct Office." (SER-235-236, ¶ 57.) Jeffords denied the appeal because Appellant had not alleged information satisfying PSU's appeal standards. (SER-235-236, ¶ 57.) Although Appellant alleged that his student conduct violation resulted in "suspen[sion]" and having to "write an essay," Appellant also alleged that the "result was permanent expulsion." (SER-237, ¶ 60.)

**B.      Procedural History Relevant to Issues on Review.**

- On January 9, 2024, Appellees moved to dismiss Appellant's Amended Complaint under Rule 12(b)(6), among other reasons. (SER-180-218.)

- On October 25, 2024, Magistrate Judge Armistead issued a Findings and Recommendation ("F&R") to grant Appellees' motion to dismiss

9

Appellant's Amended Complaint without leave to amend. (SER-104-140.)

- On November 12, 2024, Appellant filed Objections to the Findings and Recommendation. (SER-64-103.) On November 26, 2024, Appellees responded to Appellant's objections. (SER-50-64.)

- On December 2, 2024, Judge Simon adopted the F&R and granted Appellees' motion to dismiss the Amended Complaint without leave to amend. (SER-47-49.) On the same date, the District Court entered judgment dismissing the case without prejudice. (SER-46.)

- On December 9, 2024, Appellant moved for reconsideration of the District Court's dismissal of the case. (SER-21-45.) On the same day, Appellant filed a Notice of Appeal to this Court. (SER-18-20.) On December 16, 2024, the District Court denied Appellant's motion for reconsideration. (SER-16-17.)

- On December 26, 2024, Appellant moved the Court for Magistrate Judge Armistead to recuse himself based on an alleged conflict of interest due to Magistrate Judge Armistead's previous employment as a staff attorney for the Oregon Court of Appeals during the time that *Liu vs. Portland State Univ.*, 281 Or. App. 294 (2016), was decided.

(SER-15.) On January 2, 2025, the District Court denied Appellant's motion. (SER-13-14.)

- On January 8, 2025, Appellant moved the Court for Judge Simon to recuse himself based on an alleged conflict of interest because Judge Simon's wife is a Democrat. (SER-11.) On January 8, 2025, the District Court denied Appellant's motion. (SER-10-12.) On January 10, 2025, Appellant filed a Motion for Disqualification of Judge Simon under 28 U.S.C. § 455(b)(4) for the same basis as the January 8, 2025, emailed motion. (SER-7-9.) On January 13, 2025, the District Court denied the Motion for Disqualification for the same reasons as the motion for recusal. (SER-5-6.)

## V.    SUMMARY OF ARGUMENT

The District Court correctly dismissed Appellant's claims for failure to state a claim under Rule 12(b)(6). Appellant's constitutional claims against PSU under the First and Fourteenth Amendments failed as a matter of law because PSU has sovereign immunity. Appellant's First and Fourteenth Amendment claims against Jeffords also failed as a matter of law because Jeffords is entitled to qualified immunity. Additionally, Appellant's allegations were insufficient to sustain either claim. Appellant's ADA claims against PSU failed because the Amended Complaint lacked sufficient factual allegations to state a claim. In light

11

of those straightforward legal deficiencies and in an attempt to survive dismissal, Appellant now asserts that his lawsuit alleged other legal claims against Appellees. However, Appellant's Amended Complaint did not assert his new legal theories and even if he had done so, the Amended Complaint lacks factual allegations to support his claims.

## VI.    ARGUMENT

### A.    Standards of Review.

This Court reviews a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting all factual allegations as true and construing them in the light most favorable to the nonmoving party. *Fields v. Twitter, Inc.*, 881 F.3d 739, 743 (9th Cir. 2018). A court must dismiss a plaintiff's claim when (1) there is no cognizable legal theory to support the claim or (2) the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court need not credit the plaintiff's legal conclusions. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Ashcroft*, 556 U.S. at 679. This Court does not consider matters not specifically and distinctly raised and argued in the opening brief. *See Padgett v. Wright*, 587 F.3d 983, 985, n.2 (9th Cir. 2009). "An appellate court will not review an issue not raised nor objected to below unless necessary to prevent manifest

12

injustice." *Komatsu, Ltd. v. States Steamship Co.,* 674 F.2d 806, 812 (9th Cir. 1982). This Court will only address an issue not raised in the district court if the proponent "show[s] exceptional circumstances why the issue was not raised below." *Taylor v. Sentry Life Insurance Co.,* 729 F.2d 652, 655-56 (9th Cir. 1984).

This Court reviews a denial of leave to amend for abuse of discretion. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). This Court has held that dismissal without leave to amend is proper when the pleading cannot be cured by alleging other facts. *McQuillion*, 369 F.3d at 1099.

This Court reviews the denial of a recusal motion for abuse of discretion. *Jorgensen v. Cassiday,* 320 F.3d 906, 911 (9th Cir. 2003).

**B.    The District Court Correctly Dismissed Appellant's Amended Complaint for Failure to State a Claim Under Rule 12(b)(6).**

The District Court did not err in dismissing Appellant's Amended Complaint for Appellees' Motion to Dismiss under Rule 12(b)(6). Appellant's arguments on appeal do not suggest that any claim of the Amended Complaint stated a claim for relief. Therefore, the District Court properly granted Appellees' Motion to Dismiss.

**1.    The District Court correctly dismissed Appellant's First Amendment claims against Appellees.**

In the Amended Complaint, Appellant asserted that PSU and Jeffords violated his First Amendment rights by retaliating against him for stating vulgar

13

language to PSU administrators.[3] (SER-240-241, ¶ 75.)

The First Amendment states that the government cannot "abridge[e] * * * freedom of speech." U.S. Const. Amend. I. Additionally, the Petition Clause bars the government from "abridging * * * the right of the people * * * to petition the Government for a redress of grievances."[4] U.S. Const. Amend. I.

### a. Appellant's First Amendment claims against PSU fail because PSU has Eleventh Amendment immunity.

Appellant's First Amendment claims against PSU fail because PSU has Eleventh Amendment immunity. States have immunity from citizen lawsuits in federal court under the Eleventh Amendment. *See e.g., Brainard v. Western Or. Univ.*, No. 3:17-cv-0253-SI, 2017 WL 1534191, at *2 (D. Or. Apr. 26, 2017). This immunity extends to "arm[s] of the state," which includes state universities and

---

[3] On appeal, Appellant insinuates that part of the reason his First Amendment claims (and other claims) should survive are because PSU violated ORS 659.785. (Opening Br. at 51-52.) ORS 659.785(1) prohibits employers from disciplining an employee because the employee did not attend a meeting or communication in which the primary purpose of the meeting was to communicate the employer's opinion about religious of political matters. That law is inapt; Appellant's allegations describe him as a student of PSU, not an employee. Even if he were an employee, he did not allege any facts reflecting any meeting or communication in which PSU wished to communicate its opinion about a religious or political matter.

[4] In Appellant's Amended Complaint, he appeared to be asserting a Petition Clause claim (SER-237-238, ¶ 75), but he does not advance such arguments on appeal. In any event, the facts of the Amended Complaint failed to state a claim against Appellees based on the Petition Clause of the First Amendment.

14

their officials.[5] *See Doe v. Or. State Univ.*, 614 F. Supp. 3d. 847, 858 (D. Or. 2022) ("[p]ublic universities in Oregon are arms of the state and, therefore, protected by the 11th Amendment"). PSU has Eleventh Amendment immunity as to constitutional claims under Section 1983. *See Hagel v. Portland State Univ.*, 237 Fed. App'x. 146, 147 (9th Cir. 2007) (finding PSU was entitled to Eleventh Amendment immunity).

Appellant argued in his Opening Brief that the text of the Eleventh Amendment does not show that PSU has immunity and that such immunity is fiction. Appellant's arguments conflate several legal principles related to waiver of sovereign immunity and the application of qualified immunity; none of his arguments show that PSU lacks Eleventh Amendment immunity. The law is clear. PSU has Eleventh Amendment immunity and both his First Amendment-retaliation claim and his First Amendment claim purportedly on behalf of his mother fails as a matter of law.[6] To the extent that such claims were asserted against Jeffords in her

---

[5] To the extent that Appellant asserted a claim against Appellee-Jeffords in her official capacity (instead of or in addition to her personal capacity), Jeffords is entitled to Eleventh Amendment immunity. *See Hafer v. Melo*, 502 U.S. 21, 25-27 (1991) (lawsuits against state officials in their official capacities should be treated as suits against the state, and immunities available to the state apply to defendants acting in their official capacities).

[6] Appellant's seventh issue pertains to his First Amendment claim that PSU violated his right to have his mother control his education, though he also asserts that his mother is a second plaintiff to the action. (Opening Br. at 19, 25-26.)

15

official capacity, they fail. The District Court correctly dismissed the First Amendment claims against PSU as a matter of law.

### b. Appellant's First Amendment-retaliation claim against Jeffords fails because Jeffords has qualified immunity.

Appellant's First Amendment-retaliation claim against Jeffords in her personal capacity fails because Jeffords has qualified immunity.

Public officials sued in their personal capacities have qualified immunity from claims for damages. *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015). Qualified immunity shields the official unless they violated a "clearly established" statutory or constitutional right at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A right is clearly established only when "the contours of [that] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 741 (internal punctuation and citation omitted); *see also Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (noting that the "right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority" (internal citation omitted)). "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (internal citation omitted).

---

Despite this lack of clarity, Appellant's mother is not a named plaintiff in this case and neither of them have the particular First Amendment rights described.

16

In determining whether the right was clearly established, this Court "first look[s] to [its] own binding precedent." *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013). This Court has stated that district court decisions "do not necessarily settle constitutional standards" when analyzing whether a right is clearly established. *Smith v. Agdeppa*, 81 F.4th 994, 1005 (9th Cir. 2023).

Jeffords is entitled to qualified immunity because Appellant did not allege facts reflecting that Jeffords violated a clearly established First Amendment right. On appeal, Appellant asserts that the District Court erred in concluding that the right for higher education students to email profanities to university personnel is not clearly established. (Opening Br. at 55.) Furthermore, Appellant argues that the Ninth Amendment stands for the proposition that the First Amendment need not specifically state each right that might have protected Appellant's speech. (Opening Br. at 55.) But Appellant misunderstands the qualified immunity doctrine and the Ninth Amendment. The Ninth Amendment states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. But the Ninth Amendment does not change the analysis under the qualified immunity doctrine; it does not expand the scope of clearly established rights under the First Amendment.

Qualified immunity protects officials unless the alleged right at issue is so clearly established that the "contours of [that] right are sufficiently clear that

17

every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741. The Supreme Court has explained that the doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal citations omitted). Appellant does not provide any precedent showing that the right for a college student to email profanities to school administrators and be free from discipline was so clearly established that Jeffords committed a knowing violation of the law. In fact, the District Court found the case law reflects the opposite and cited several cases showing that students' First Amendment rights in higher education is unclear, not clearly established. *See e.g., Oyama v. Univ. of Hawaii*, 813 F.3d 850, 862-64 (9th Cir. 2015) (finding no First Amendment violation when university denied student's admission to student teaching program based on student's statements); *Radwan v. Manuel*, 55 F.4th 101, 120-23 (2d Cir. 2022) (finding officials entitled to qualified immunity because there was no clearly established right for university student to engage in vulgar speech at school-sponsored event).

In sum, the District Court correctly found that no clearly established right to use vulgar language toward a PSU administrator existed and Jeffords is entitled to qualified immunity. The District Court did not err in dismissing Appellant's First Amendment-retaliation claim against Jeffords.

18

**c.** **Appellant's First Amendment-retaliation claim lacks sufficient allegations to state a claim for relief.**

Even without Eleventh Amendment immunity for PSU and qualified immunity for Jeffords, Appellant's factual allegations do not state a First Amendment-retaliation claim as a matter of law.

To establish a First Amendment-retaliation claim in the student speech context, a plaintiff must establish that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *and see James*, 2016 WL 7851409, at *10 (analyzing First Amendment claim based on retaliation for petitioning activity).

Appellant argues on appeal that he has pleaded sufficient facts to satisfy each element. As to the first element of protected speech, Appellant argues that he was "engaging in free speech by expressing his sincerely held moral and religious objection." (Opening Br. at 54.) But Appellant conflates the concept of free speech with religious accommodations and in any event, his speech was plainly not protected by the First Amendment and furthermore, the allegations of the Amended Complaint do not support that Appellant's vaccine exemption request was based on his religion.

19

As to the third element of causation, Appellant argues on appeal that he alleged a causal connection because Jeffords was required to give Appellant a quasi-judicial hearing.[7] (Opening Br. at 54-55.) But Appellant's argument does not

---

[7] At various points in the Opening Brief, Appellant refers to PSU's alleged failure to offer him sufficient notice of a quasi-judicial hearing process or a contested case hearing under the Oregon APA, under ORS Chapter 183. (*See e.g.*, Opening Br. at 14, 22.) Appellant cites to ORS 352.087(1)(m), a law that permits Oregon public universities to establish policies, for the proposition that PSU's student conduct policies have allegedly given PSU arbitrary rights to remove students' rights in its conduct proceedings. (Opening Br. at 35, 57.) Additionally, Appellant points to *Liu v. Portland State Univ.*, 281 Or. App. 294 (2016) to support his argument. But Appellant again conflates concepts and misunderstands the law in this area. Even if Appellant were owed a process through the APA (and he was not), he waived the time to challenge that issue because the time for seeking judicial review of the contested case process has long since passed. ORS 183.482(1) (providing that the Oregon Court of Appeals has jurisdiction over proceedings for judicial review and such petitions must be filed within 60 days of the act upon which review is sought). Additionally, the allegations of the Amended Complaint do not involve a contested case hearing process and there are no facts suggested Appellant requested one. As to *Liu*, that case involved a student's dismissal from PSU in 2012. At that time, the Oregon University System (the "OUS") was governed by ORS Chapter 351 and *Liu* was in part decided on the basis of ORS Chapter 351 statutes. Later, the Legislature reorganized higher education in Oregon and dissolved the OUS and those statutes were repealed; therefore, the contested case hearing process under ORS Chapter 183 does not apply to Appellant's circumstances and *Liu* is inapposite.

Relatedly, Appellant's second Issue Presented focused on whether he pled a Fifth Amendment claim based on the alleged "lack of fair notice under ORS 183.417" and the "lack of finding of fact by preponderance," though he did not include detailed arguments. (Opening Br. at 25.) As described, PSU did not owe him procedures under the APA. More to the point, Appellant did not assert a Fifth Amendment claim pertaining to any topic, let alone a claim about the Oregon APA in his Amended Complaint and this Court should not consider it for the first time on appeal. Indeed, the Fifth Amendment is inapplicable to Appellant's case in any

establish causation. In fact, Appellant had to allege that Appellees had a retaliatory motive that caused the harm, meaning allegations reflecting "plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct," through either direct or circumstantial evidence. *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019) (internal citations omitted); *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019). The District Court correctly found the Appellant did not plausibly allege circumstances reflecting any retaliatory motive. Throughout the briefing in this case, Appellant has focused on allegations that PSU and Jeffords were motivated by politics, but no facts plausibly suggest any such motive.

In sum, in addition to the immunities PSU and Jeffords are entitled to, Appellant also failed to allege facts supporting a First Amendment-retaliation claim against Appellees.

**2.      The District Court properly dismissed Appellant's Fourteenth Amendment Substantive Due Process claims against Appellees.**

Appellant's Fourteenth Amendment claims asserted that PSU and Jeffords violated Appellant's substantive due process rights by applying the "preponderance of the evidence" standard and not the "clear and convincing"

---

event. *Castillo v. McFadden*, 399 F.3d 993, 1002, n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several states.")

evidence standard in its student conduct process. But the District Court correctly found that Appellant's claims fail as a matter of law.

An individual may bring an action based on a constitutional violation under Section 1983 if a plaintiff can show a "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2001) (internal citations omitted). The Fourteenth Amendment provides that no State "shall * * * be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The "substantive due process" clause "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (internal citations omitted). The Supreme Court has explained that the "touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Williams v. Brown*, 6:21-cv-01332-AA, 2023 WL 6379771, at *2 (D. Or. Sep 30, 2023) (stating that a plaintiff must as a threshold matter "identify a liberty or property interest protected by the Constitution"). Because only the "most egregious official conduct" is considered arbitrary, a plaintiff must establish that the deprivation "shock[ed] the conscience and offend[ed] the community's sense of fair play and decency."

22

*Williams*, 2023 WL 6379771 at *3 (citations omitted). To state a substantive due process claim, a plaintiff "must show both a deprivation of [his] liberty and conscience shocking behavior by the government[.]" *Alfano v. Farley*, No. 3:12-cv-2319-PK, 2014 WL 2041137, at *7 (D. Or. Apr. 29, 2014).

### a. PSU has Eleventh Amendment immunity.

As explained in Section VI.B.1.a., *supra*, Appellant's Fourteenth Amendment claim against PSU fails as a matter of law because PSU has Eleventh Amendment immunity.

### b. Appellant's Fourteenth Amendment Claim Fails Against Jeffords.

Appellant's Fourteenth Amendment claim against Jeffords in her personal capacity fails because Jeffords has qualified immunity.[8]

---

[8] In the Opening Brief, Appellant argues that this Court should restore his "[Section] 1983 Action at Law claims," which appears related to his Fourteenth Amendment claims. (Opening Br. at 68-72.) Appellant argues that he was trying to assert a claim for declaratory relief concerning the proper application of the clear and convincing evidence standard to his student conduct proceeding. (Opening Br. at 69-70.) The District Court correctly found that Appellant's allegations could not sustain a claim for such a declaratory decree. (SER-112-113.) Under the *Ex Parte Young* doctrine, a plaintiff could sue a state official if the plaintiff seeks prospective injunctive relief rather than retrospective relief. *See Ex Parte Young*, 209 U.S. 123 (1908); *Cornel v. Hawaii*, 37 F.4th 527, 531-32 (9th Cir. 2022). Despite the fact that Appellant also repeatedly indicated he was seeking damages, (*See* SER-145, 153), even if Appellant is seeking only prospective declaratory relief, the District Court correctly found that the *Ex Parte Young* doctrine only applies when a plaintiff alleges a plausible ongoing violation of federal law. *See Cornel*, 37 F.4th at 532. Appellant has not identified an ongoing violation of

###### c. Jeffords has qualified immunity.

Appellant alleged in the Amended Complaint that Jeffords violated his due process rights by (1) "permanently" suspending him and (2) not applying the clear and convincing evidence standard to his conduct proceeding. (SER-241-242, ¶¶ 78-79.) On appeal, Appellant again asserts that qualified immunity is a "fictional" concept that is unconstitutional because it somehow "overturn[s] the Ninth Amendment" of the U.S. Constitution, (Opening Br. at 58-59), but none of his arguments plausibly suggest that Jeffords violated a clearly established due process right.

As to the alleged right to continued enrollment, the District Court reviewed cases and properly found that no binding precedent exists holding that higher education students have a clearly established due process right to continued enrollment attending a university. (*See* SER-120 citing *Doe v. White*, 440 F. Supp. 3d 1074, 1084-85 (N.D. Cal. 2020)). The District of Oregon has also found the same. *See, e.g.*, *Doe v. Or. State Univ.*, 614 F. Supp. 3d at 859 (granting qualified immunity to school officials concluding that plaintiff did not demonstrate property interest in continued enrollment); *Doe v. Univ. of Or.*, No. 6:17-cv-01103-AA, 2018 WL 1474531, at *12-14 (D. Or. Mar. 26, 2018) (granting qualified

---

federal law because there is no constitutional right for a clear and convincing evidence standard to apply to student conduct hearings.

24

immunity to university officials who suspended student because there is no clearly established property right to higher education in Oregon or in the Ninth Circuit); *see also Andrews v. Treasure Valley Comm. Coll.*, No. 2:19-cv-01314-SU, 2020 WL 1678050, at \*4 (D. Or. Mar. 18, 2020) (granting qualified immunity to college official who dismissed student because there is no clearly established property right to higher education). Indeed, on appeal, Appellant does not argue otherwise.

As to the alleged right for application of the clear and convincing evidence standard to the conduct proceeding, no such right exists. Appellant relies on *Troxel v. Granville*, 530 U.S. 57 (2000), asserting that the case supports the proposition that the Fourteenth Amendment requires the clear and convincing evidentiary standard. While that case addresses the Fourteenth Amendment, the liberty interest at issue involved the "interest of parents in the care, custody, and control of their children." *Troxel*, 530 U.S. at 65. The District Court correctly found that *Troxel* and other cases related to child custody matters are not precedent showing that higher education students have a clearly established due process right to a certain evidentiary standard in student conduct proceedings.

25

In short, the District Court correctly found that Jeffords was entitled to qualified immunity and dismissed Appellant's Fourteenth Amendment due process claim against her.[9]

### 3. The District Court properly dismissed Appellant's ADA claims against PSU.

In the Amended Complaint, Appellant asserted that PSU violated the ADA in three ways, by (1) intentionally discriminating against Appellant during the student conduct process; (2) failing to provide reasonable accommodations to Appellant during the student conduct process; and (3) discriminating against Appellant by charging him full-price tuition for retaking classes. The District Court correctly found the claims failed under Rule 12(b)(6). On appeal, Appellant recasts his ADA claims or perhaps is asserting a new separate theory that PSU disparately impacted Appellant violating the ADA, by preventing him from graduating and receiving Federal Work Study. None of Appellant's claims allege a viable claim for relief and the District Court properly dismissed them as a matter of law.[10]

---

[9] Additionally, even without Appellees' immunity, Appellant did not state sufficient allegations to sustain his Fourteenth Amendment claim against either Appellee because he did not allege a deprivation of a right and "conscience shocking behavior by the government." *See Alfano*, 2014 WL 2041137 at *7.

[10] On appeal, Appellant also asserts that PSU violated Section 504 of the Rehabilitation Act of 1973 ("Section 504") based on the same topics as his ADA claims. Appellant did not mention Section 504 in his Amended Complaint, so it is unnecessary for this Court to consider his claims under Section 504. Even if it did, the Section 504 standards align with the ADA, and since none of Appellant's ADA

26

Title II of the ADA provides that:

> "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. A disability discrimination claim may be based "on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016) (internal citations omitted). To establish disability-discrimination under Title II of the ADA, a plaintiff must show that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). For money damages, Appellant must also show "that the defendant intended to discriminate on the basis of his or her disability, or was deliberately indifferent to the disability." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 466 (9th Cir. 2015).

---

claims are insufficient, any Section 504 claim would also be insufficient. *See Duvall*, 260 F.3d at 1135.

27

### a. Appellant did not allege a claim that PSU discriminated against Appellant during the student conduct process.

Appellant alleged that PSU discriminated against him by treating him differently than students who do not have his disability. (SER-238, ¶ 66.) While Appellant seems to have abandoned this legal issue on appeal because he did not argue that it should have survived, if it should have survived, PSU addresses it briefly. The District Court correctly found that Appellant failed to allege facts reflecting intentional disability-discrimination during the student conduct process.

The District Court framed Appellant's claim as alleging that PSU discriminated against him by failing to train student conduct personnel to ask students whether they have a disability-based communication barrier related to using offensive language. To state a plausible ADA failure-to-train claim, a plaintiff must allege facts showing that "(1) the existing training program is inadequate in relation to the tasks the [employees] must perform; (2) the failure to train amounts to deliberate indifference to [the plaintiff's rights]; and (3) the inadequacy of the training actually caused [a violation of his ADA rights]." *See Robertson v. Millett*, No. 2:22-cv-01983, 2022 WL 16571702, at *5 (D. Ariz. Nov. 1, 2022).

The District Court correctly observed that Appellant failed to allege facts that might establish deliberate indifference because plaintiff did not allege any pattern of other similar violations, which courts have required to find sufficient

28

information for a failure to train claim under the ADA. *See e.g.*, *Williams v. Cnty. of Los Angeles*, No. 2:22-cv-05798-PA-AS, 2024 WL 2862587, at *2-3 (9th Cir. June 6, 2024) (finding absent a pattern of other violations, the claim was insufficiently pled). Indeed, aside from allegations that PSU and Appellant emailed to coordinate the student conduct hearing, Appellant alleged no facts sufficient to show intentional discrimination with respect to Appellant or any pattern of similar violations related to students using offensive language and related communication barriers. In short, Appellant's ADA claim fails as a matter of law under Rule 12(b)(6).

> **b.      Appellant did not allege a claim that PSU failed to accommodate him during the student conduct process.**

Appellate alleged that PSU failed to accommodate his disability in the student conduct process by not offering him a translator to translate his "offensive speech" into appropriate language. (SER-238-239, ¶¶ 66-67; SER-147-148.) Again, while Appellant seems to have abandoned this legal issue on appeal because he did not argue that it should have survived, PSU addresses it briefly. The District Court properly granted dismissal.

To survive dismissal on a failure-to-accommodate claim, Appellant had to allege facts showing that (1) he needed an accommodation (the "offensive language translator"); (2) PSU knew that he needed the accommodation; and (3) that the accommodation was reasonable. *See e.g.*, *Mark H. v. Hamamoto*,

29

620 F.3d 1090, 1097-98 (9th Cir. 2010). This Court has stated that to meet the "high bar" of deliberate indifference, a plaintiff must show that that the entity had notice of the need for accommodation and that the entity failed to act upon the notice. *Duvall*, 260 F.3d at 1139. "Notice is usually provided when the plaintiff has *alerted* the public entity to his need for accommodation," if the need is obvious, or is required by statute or regulation. *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 969 (9th Cir. 2021) (emphasis in *Csutoras*) (granting dismissal of failure-to-accommodation claim because entity did not have notice and need for accommodation was not obvious or legally required).

Here, the District Court correctly determined that Appellant failed to allege facts sufficiently establishing deliberate indifference. Even assuming that an "offensive language translator" accommodation was reasonable for Appellant's circumstances, Appellant did not allege that PSU was on notice of his need for such an accommodation, that he sought an accommodation, or that PSU then failed to provide it given that knowledge. In short, the claim fails as a matter of law.

     **c.**     **Appellant did not allege a claim that PSU discriminated against Appellant by charging tuition to retake classes.**

Appellant alleges that PSU discriminated against him charging full tuition for him to retake failed classes rather than accommodating a reduction in price due to his disability. (SER-239, ¶¶ 68-69.) On appeal, Appellant recasts the

claim about tuition as a disparate impact claim (discussed more in the next section). (Opening Br. at 65.)

Based on the allegations of the Amended Complaint, the District Court correctly analyzed the claim as a failure-to-accommodate claim, rather than a disparate impact claim. The District Court dismissed the claim because Appellant did not allege facts showing that an accommodation for reduced tuition was reasonable. *See Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1046 (9th Cir. 1999) (emphasizing that the "Supreme Court has made clear that an educational institution is not required to make fundamental or substantial modifications to its program or standards; it need only make reasonable ones"). Furthermore, Appellant did not allege that he requested the accommodation or otherwise that PSU understood Appellant needed such an accommodation. Importantly, Appellant did not allege facts suggesting that PSU was deliberately indifferent toward Appellant. In short, the District Court correctly dismissed the claim.

> **d.    Appellant did not allege a disparate-impact discrimination claim against PSU.**

In Section IV of Appellant's arguments in his Opening Brief, and only on appeal, Appellant asserts that PSU discriminated against him by disparately impacting him when PSU allegedly charged him tuition to retake classes, by "punishing his sincerely held moral and religious objection and political speech

31

that contained profanities caused by his disability," and by preventing him from graduating or receiving Federal Work Study.[11] (Opening Br. at 64-66.)

As an initial matter, appellants generally cannot raise new claims for the first time on appeal. *Mabe v. San Bernardino Cnty., Dep't of Public Social Servs.*, 237 F.3d 1101, 1112 (9th Cir. 2001). This Court has held that issues that were not presented to the district court cannot be raised on appeal, unless (1) there are "exceptional circumstances" for why the issue was not raised in the lower court; (2) there was a change in the law while on appeal; or (3) the issue is purely a legal issue and the opposing party would suffer no prejudice as a result of the failure to raise the issue earlier. *U.S. v. Robertson*, 52 F.3d 789, 791 (9th Cir. 1994). Here, Appellant's attempt to raise disparate impact claims—that were not raised in the District Court in the Amended Complaint or any briefing—do not warrant this Court's consideration. Appellant does not present any arguments for why this Court should consider a new claim; indeed, the circumstances argued do not fit any exception to the general rule that this Court does not consider new claims raised for the first time on appeal.

---

[11] Appellant also asserts that he was denied equal participation due to PSU's alleged disability-discrimination, which violates Article 1, Section 20 of the Oregon Constitution. (Opening Br. at 66.) That provision prohibits passage of any law granting privileges and immunities that do not equally belong to all citizens. Or. Const., Art. 1, § 20. Appellant's allegations and arguments do not show that he suffered unequal treatment. This issue is addressed further in Section VI.D.2.

Even if this Count considers Appellant's disparate impact claims, the allegations are insufficient to state a viable claim to relief. To show a prima facie case of disparate impact under the ADA, a plaintiff must allege facts showing that that a "facially neutral policy falls more harshly on a protected group than the whole." *Jefferson*, 584 Fed. App'x. at 522. A plaintiff must plead facts showing (1) that there exists a significant disparate impact on a protected group; (2) identify the specific practice at issue; and (3) a causal relationship between the specific practice and the disparate impact. *Mobley*, 740 F. Supp. 3d at 809 (applying Title VII disparate impact framework to ADA claim). Here, the allegations of the Amended Complaint do not show a disparate impact on other similar individuals to Appellant. Appellant alleged broadly that PSU discriminated against "students like [Appellant] with mental disabilities," (SER-238, ¶ 66), but a legal conclusion is insufficient to state a claim. The Amended Complaint provides no allegations describing the specific practices at issue—that PSU allegedly discriminated against students with disabilities by charging tuition for failed classes, by punishing a religious objection, by preventing their graduation, or by preventing them from receiving Federal Work Study—as having a disparate impact among other students similar to Appellant. Appellant's allegations focus on his own alleged circumstances. Therefore, the allegations do not state a claim.

33

**C.      Appellant's Other Alleged District Court Errors Are Unfounded.**

**1.      The District Court correctly denied Appellant's recusal motions.**

After the District Court dismissed Appellant's Amended Complaint, he moved the Court for Magistrate Judge Armistead and Judge Simon to recuse themselves. (SER-7-9, 11, and 15.) Appellant argued that the circumstances warranted disqualification under 28 U.S.C. § 455(b). On appeal, Appellant essentially asserts that the District Court erred by not recusing Magistrate Judge Armistead and Judge Simon from the proceedings. (Opening Br. at 76-80.)

28 U.S.C. § 455(b) provides in relevant part, that judges shall disqualify themselves when (1) the judge has a personal bias concerning a party or personal knowledge of the evidence; (2) in private practice, the judge served as a lawyer for the matter in controversy, the judge practiced with a lawyer for the matter, or the judge was a material witness to the matter; (3) the judge served in governmental employment and participated as counsel, adviser, or material witness concerning the proceeding or expressed an opinion about the merits of the case; (4) the judge has a financial interest in the proceeding; or (5) the judge or their spouse is a party to the proceeding, is acting as a lawyer, is known to have an interest that could be substantially affected by the outcome, or is likely to be a material witness in the proceeding.

34

### a. Appellant's Recusal Motion—Magistrate Judge Armistead.

Appellant asserted that Magistrate Judge Armistead should be recused under 28 U.S.C. § 455(b)(3) because he served in a governmental employment with the Oregon Court of Appeals when a different case, *Liu vs. Portland State Univ.*, 281 Or. App. 294 (2016), was decided, and because Appellant cited *Liu* in his briefing. (SER-15.) The District Court correctly denied the motion because the circumstances do not fit the disqualification standards of the statute. According to the District Court's ruling, Magistrate Judge Armistead did not participate in the "particular case in controversy" when he worked at the Oregon Court of Appeals; *Liu* was merely legal authority discussed in Appellant's briefs and was not connected to Appellant's circumstances. (SER-13-14.) Appellant's arguments on appeal do not reflect that the District Court erred in denying the recusal motion.

### b. Appellant's Recusal Motion—Judge Simon.

Appellant asserted that Judge Simon should be recused under 28 U.S.C. § 455(b)(4) and (5) because, according to Appellant, Judge Simon and his wife, a Democrat U.S. Representative, could have a financial interest in the case, because Judge Simon would "rubber stamp" Democrat views, or because Judge Simon's wife may be a material witness in the proceeding. (SER-5-6, 7-9, and 10-12.) The District Court correctly denied the motion because the circumstances do not fit the disqualification standards of the statute, given that

35

Appellant's Amended Complaint and other pleadings never referenced Judge Simon's wife, despite referencing other specific Democrat elected officials. (SER-10-12.) Appellant's arguments on appeal do not reflect that the District Court erred in denying the recusal motion.

2.     **The District Court correctly denied leave to amend.**

The District Court did not grant Appellant leave to amend his complaint when it dismissed the case because, in pertinent part, the District Court had already provided him an opportunity to amend his complaint and he again stated insufficient allegations. (SER-104-140, 47-49 and 46.) On appeal, Appellant asserts that leave to amend should be granted when the complaint can be saved by amendment and he lists topics that could be amended.

When a court has already provided an opportunity to amend, district courts have wide discretion in whether granting subsequent leave to amend. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). This Court has held that dismissal without leave to amend is proper when the pleading cannot be cured by alleging other facts. *McQuillion v. Schwarzenegger*, 369 F.3d at 1099. As to a *pro se* litigant, dismissal without leave to amend is proper when appears beyond doubt that they cannot prove any set of facts that would entitle them to relief. *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).

Here, the District Court provided Appellant an opportunity to amend his complaint to cure deficiencies and Appellant's Amended Complaint still failed to state any viable claim against Appellees under Rule 12(b)(6). (SER-219-262.) The District Court correctly found that given that concerning Appellant's First and Fourteenth Amendment claims, Appellees are entitled to Eleventh Amendment immunity (PSU) and qualified immunity (Jeffords), no amendment could cure those claims. (SER-104-140.) As to Appellant's ADA claims, the District Court correctly found that Appellant admitted that he never disclosed his disability status during the student conduct proceeding and presented no facts to infer that PSU acted deliberately indifferent toward his disability, he could not plead facts to cure the claims. (SER-104-140.) Additionally, Appellant's proposed new fact topics do not contain any facts remotely suggesting that his claims can be cured by amendment. In short, the District Court correctly denied leave to amend.

**D.     Appellant's New Claims Cannot be Raised for the First Time on Appeal and are Nevertheless Insufficient.**

      **1.     Appellant's religious-discrimination claims under Title VII, FEHA, and ORS 659.850 were not raised to the District Court and the allegations do not state a claim.**

On appeal, Appellant argues that the Court should "restore" Appellant's claim for religious discrimination under Title VII, FEHA, and

37

ORS 659.850.[12] (Opening Br. at 43-51.)

Title VII prohibits employers from discriminating against employees because of their religion. 42 U.S.C. § 2000e-2(a). Title VII requires employers to accommodate employees' "bona fide religious beliefs" that conflict with an employment requirement unless doing so would impose an undue hardship on the employer. *Bolden-Hardge*, 63 F.4th at 1222. The FEHA is a California law that imposes similar requirements on California employers. Cal Gov't. Code § 12940(a). Further, ORS 659.850 is an Oregon law that also prohibits educational institutions from engaging in religious discrimination.

The crux of Appellant's arguments appears to be that PSU failed to accommodate his religious beliefs—which allegedly conflicted with the COVID-19 vaccine requirement—by disciplining him during the student conduct process. Critically, Appellant did not assert claims in the Amended Complaint under these laws and he offered no reason why he did not do so, so this Court need not consider them on appeal. *See U.S. v. Robertson*, 52 F.3d 789, 791 (9th Cir. 1994) (holding that issues not presented to the district court cannot be raised on appeal absent exceptional circumstances, a change in the law, or a purely legal issue not imposing prejudice on the other party).

---

[12] Appellant's Opening Brief lacks an issue presented concerning his alleged religious discrimination claims, but given that Appellant dedicated a portion of his legal arguments to the topic, Appellees address his arguments.

Even if this Court considers Appellant's religious discrimination claim on appeal, the allegations are insufficient to state a viable claim to relief for several reasons. First, Title VII provides employee protections and no allegations in the Amended Complaint reference Appellant as PSU's employee; rather Appellant was a student of PSU. Second, the FEHA is a California statute pertaining to California employers; no allegations of the Amended Complaint suggest that PSU was a California employer or that Appellant was a California-based employee of PSU.

Third, as to the ORS 659.850 claim and the concept of religious discrimination generally, the Amended Complaint focuses on Appellant's complaint about the vaccine mandate as a "political protest," (SER-234, ¶ 56), and challenge PSU's student conduct process; the allegations do not focus on his religion. The Amended Complaint contains one errant reference to a "religious objection" concerning the COVID-19 vaccine, in Appellant's written statement to the student conduct hearing officer. (SER-233) ("You can expect a vitriolic response from students who have a spin. That's a religious's [sic] held moral objection. You can expect people to cuss you out and tell them to suck your dick and kick your ass.") Plaintiff's briefing sought to characterize the vaccine exemption request as seeking a religious exception after the fact, (SER-145), but critically, Appellant's initial email about the vaccine waiver did not mention

39

religion at all. (*See* SER-230, ¶ 48.) The Amended Complaint does not explain that

he was seeking a religious accommodation or describe why his religion required

the accommodation; furthermore, they do not remotely suggest that Appellees

discriminated against Appellant on the basis of religion.

In short, Appellant's new arguments and claims on appeal that

Appellees discriminated against him on the basis of religion are meritless.

**2.     Appellant's Privileges and Immunities Claim under the Oregon Constitution was not raised to the District Court and the allegations do not state a claim.**

In Appellant's eighth issue presented and sixth legal argument, he

asserts that the District Court erred by not finding that Appellant had pleaded a

claim under the Oregon Constitution's Privileges and Immunities Clause,

Or. Const., Art. 1, § 20, by treating him unequally through the COVID-19 vaccine

mandate, by charging tuition for retaking classes, and by punishing his profanities.

(Opening Br. at 26.)

Importantly, Appellant did not assert a claim in the Amended

Complaint under the Oregon Constitution and he offered no reason why he did not

do so that align with the permitted exceptions, so this Court need not consider it on

appeal. *See Robertson*, 52 F.3d at 791.

Though Appellant admits that he did not mention the Oregon

Constitution's Privileges and Immunities Clause in the Amended Complaint, (*see*

40

Opening Br. at 74), he nevertheless insists that his vague reference to the Privileges and Immunities Clause concerning engaging in trade and commerce with PSU, was sufficient to plead such a claim concerning alleged unequal treatment related to the vaccine, tuition, and student discipline.

The Oregon Constitutional provision prohibits passage of any law granting privileges and immunities that do not equally belong to all citizens. Or. Const., Art. 1, § 20. Appellant's allegations and arguments in the Amended Complaint and subsequent briefing—including the appeal to this Court—do not reflect unequal treatment of Appellant in PSU's application routine operations including imposing the vaccine requirement, collecting tuition for retaking classes, or imposing student discipline based on Appellant's vulgar comments to PSU administrators. Conversely, Appellant seems to challenge generally applicable student policies; he asserted no facts remotely suggesting that he was subjected to what another similarly-situated student was not. In sum, Appellant did not plead the claim and this Court need not consider it.

## VII. CONCLUSION

The District Court carefully evaluated the allegations of the Amended Complaint and correctly concluded that Appellant's allegations were insufficient to state any claim against Appellees. As to the constitutional claims, PSU has sovereign immunity and Jeffords has qualified immunity. As to the ADA claims,

41

Appellant's allegations do not state any claim for relief. Finally, Appellant's new claims and legal theories should not be considered on appeal for the first time, but even if this Court were to consider them, none state a claim for relief against Appellees. The Appellees respectfully request that the Court affirm the judgment of the District Court in its entirety.

DATED:  March 28, 2025                    MILLER NASH LLP


                                          s/*Erin M. Burris*
                                          Erin M. Burris, OSB No. 155379

                                          *Attorneys for Appellees*
                                          *Portland State University and Susan*
                                          *Jeffords*

42

## STATEMENT OF RELATED CASES

**9th Cir. Case Number(s):** 24-7617

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this Court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated this 28th day of March, 2025.

s/*Erin M. Burris*

Erin M. Burris, OSB No. 155379

*Attorneys for Appellees*
*Portland State University and Susan*
*Jefords*

43

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limits permitted by Ninth Circuit

Rule 32-1. The brief is 9,662 words, excluding the portions exempted by

Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply

with Fed. R. App. P. 32(a)(5) and (6).

Dated this 28th day of March, 2025

s/*Erin M. Burris*

Erin M. Burris, OSB No. 155379

*Attorneys for Appellees*
*Portland State University and Susan*
*Jeffords*

4919-4208-4654.1

44

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form15instructions.pdf](http://www.ca9.uscourts.gov/forms/form15instructions.pdf)

**9th Cir. Case Number(s)** | 24-7617

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

[X] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are __NOT__ Registered for Electronic Filing:**

[X] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

> Chal Jamison McCollough
> 3170 W. 14th Avenue
> Eugene, OR 97402
> EMail: chalmccollough@hotmail.com

**Description of Document(s)** *(required for all documents)*:

> Appellees' Answering Brief and Supplemental Excerpts of Record

**Signature** | s/Erin M. Burris     **Date** | March 28, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 15**        45        *Rev. 12/01/2018*