No. 24-7617

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

Chal McCollough

*Plaintiff-Appellant,*

*v.*

Portland State University C/O Ann Cudd and

Susan Jeffords of Portland State University

*Defendants-Appellees.*

On Appeal from the United States District Court for Oregon

Case Number: 3:23-cv-01582-AR

The Honorable Michael H. Simon, United States District Judge.

# APPELLANT'S PETITION FOR PANEL REHEARING

## INTRODUCTION

Plaintiff-Appellant Chal Jamison McCollough respectfully petitions for panel rehearing limited to Part 1 of the Court's July 23, 2026 memorandum disposition. Appellant does not seek reconsideration of the Court's favorable rulings reinstating his First Amendment retaliation claim, rejecting qualified immunity at the pleading stage, and requiring application of *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), to Portland State University's assertion of sovereign immunity.

Part 1 describes Appellant's due process claim only as a demand that PSU use a particular evidentiary standard. Mem. 2-3. That description does not reach a threshold theory presented in Appellant's pro se filings: Defendant-Appellees provided no adjudicative proceeding capable of applying any evidentiary standard. PSU invited a written response in lieu of attendance, treated Appellant as absent after he submitted that response, relied on a student-conduct file he had no meaningful opportunity to answer, and made no findings of fact identifying what evidence established material disruption. Jeffords then affirmed the deprivation. Whether the Constitution categorically prescribes preponderance, clear-and-convincing evidence, or substantial-evidence review does not resolve whether PSU supplied notice, a meaningful opportunity to answer, an authorized decision-maker, and findings connecting evidence to a lawful ground for

expulsion. Appellant also asserted a related substantive anti-arbitrariness theory and challenged the authority and factual justification for PSU's vaccine requirement and exemption process. The disposition does not address those theories separately or Appellant's alternative request for leave to amend them more clearly.

Appellant uses "Substantial Evidence Protection" to describe protection against a severe deprivation imposed on accusation or opinion lacking factual substance; he does not confuse substantial-evidence review with a burden of proof. He preserves his contention that clear-and-convincing evidence was required because Certain Fundamental Rights, severe consequences, and a high risk of error were at stake. Rehearing need not accept that categorical proposition. A process that disregards the permitted response, withholds the factual basis, and makes no reviewable findings fails before the Court selects an evidentiary burden. Troxel v. Granville, 530 U.S. 57 (2000), and Santosky v. Kramer, 455 U.S. 745 (1982), further support calibrating constitutional protection to the interests, consequences, and risk of error.

Rehearing is warranted because the absence of a previously announced university-specific burden does not resolve whether Appellant stated this anti-arbitrariness claim, whether the First Amendment itself required evidence of actual material disruption, or whether he should have been permitted to plead the constitutional theory separately. The panel can correct Part 1 without disturbing any favorable portion of its disposition.

# I. THE PANEL OVERLOOKED APPELLANT'S DISTINCT CLAIM THAT PROCEDURE CANNOT LEGITIMIZE A DEPRIVATION LACKING A SUBSTANTIAL FACTUAL FOUNDATION

## A. Substantive due process protects certain fundamental liberties regardless of the procedure used.

The Fourteenth Amendment restrains state power through procedural and substantive due process. The substantive component protects certain fundamental liberties from arbitrary government interference regardless of procedure. Washington v. Glucksberg, 521 U.S. 702, 720 (1997); Troxel, 530 U.S. at 65 (plurality opinion). Procedure is necessary when government deprives life, liberty, or property, but formal procedure cannot validate a substantively forbidden deprivation. Nor does ORS 352.087, which gives specified university policies "the force of law," relieve PSU of federal constitutional limits. Appellant alleges that PSU assigned protected rights no meaningful weight and imposed a severe deprivation without facts sufficient to justify it.

Appellant's claim rests on that distinction. He does not assert a right to win every factual dispute. Appellant is an Originalist and asserts a negative right not to have the State take or burden protected Rights, Privileges, or Immunities through a decisional framework that assigns the Right, Privileges, and Immunities no meaningful weight and permits unsupported accusation or personal preference to substitute for constitutionally sufficient facts. Appellant distinguishes

ordinary regulation from an adjudicative deprivation backed by state authority. Here, the alleged consequences included a registration block, discipline for political speech, and what the memorandum describes as suspension and expulsion. Mem. 1-2; Am. Compl. para. 55; Opening Br. 54.

Appellant alleged two related but legally distinct sources of responsibility. PSU designed and administered the disciplinary system mixing legislative and judiciary powers in an administrative state, and supplied the asserted disruption rationale; Jeffords personally reviewed the record and affirmed or imposed the continuing deprivation. Appellant's asserted injury is not merely that PSU disliked and punished his political speech. He alleges that the process itself was punitive: no neutral adjudication tested the asserted disruption, no finding connected disclosed evidence to a lawful ground for expulsion, and the permitted written response was treated as nonappearance. Had an actual adjudication required PSU to identify evidence and make reviewable findings, an unsupported assertion of disruption could not have substituted for proof. PSU's entity liability and Jeffords' individual liability remain distinct, as do PSU's unresolved arm-of-state defense under Kohn and Jeffords's individual immunity defense to the First Amendment claim, which the panel rejected at the pleading stage.

**B. Troxel establishes the anti-arbitrariness principle supporting Appellant's claim.**

Troxel did more than ask whether a parent received a hearing. It

examined whether the State had a constitutionally adequate basis for overriding the parent's First Amendment Right to the care, custody, and control of her children. No one alleged or found Granville unfit. 530 U.S. at 68. Yet the State Court effectively required her to disprove the third party's request, gave her decision no special weight, and relied on "slender findings" reflecting disagreement about the children's best interests. Id. at 69-73. Appellant relies on Troxel's anti-arbitrariness principle: procedure must give a fundamental right real decisional weight and cannot substitute unsupported findings for constitutionally sufficient justification.

Appellant understands *Troxel* did not prescribe a clear-and-convincing burden for university discipline. It nevertheless establishes the governing principle: the State cannot override a fundamental liberty (and certainly the privileges and immunities of the Several States) through reversed presumptions, failure to give the Right meaningful weight, and findings too insubstantial to establish constitutionally sufficient harm. *Santosky v. Kramer*, 455 U.S. 745, 756-70 (1982), further demonstrates that the Constitution calibrates evidentiary protection to the private interests at stake, the risk of error, and the consequences of an erroneous deprivation. Appellant asks the Court to apply those principles where a public university used arbitrary State power disciplinary authority against protected political speech and arbitrary power to impose a social distancing, mask, and vaccine mandates.

Appellant's prior Oregon third-party custody proceeding under

ORS 109.119 explains why this protection is concrete and essential to him and why the challenged email used "colorful" language. He maintains that an unsupported custody determination and the resulting Court-mandated parenting-time order imposed travel on the Amtrak that confined his movements at extraordinary expense, impaired access to PSU laboratories and academic performance, increased tuition costs from retaking courses, and contributed to lasting psychological injury. Opening Br. 29-31. He also maintains that his statements criticizing that proceeding were a protected petition and political speech, that he always acted in his child's best interests, that he never used a baby monitor with friends over, that he never denied maternal grandmother access to his son, and that he only raised his voice to maternal grandmother in front of his son because she would not stop alienating him from his son. Yelling was maternal grandmother's characterization without any substantial facts.

Appellant does not seek damages from, review of, or correction of the state custody judgment in this federal appeal. Any effort to correct that record belongs in the proper Oregon proceeding. The history is relevant here only as context for the speech PSU punished and for the alleged consequences of unsupported legal process. Troxel recognized that litigation itself can burden the protected parent-child relationship. 530 U.S. at 75.

Appellant invokes the Ninth Amendment only as interpretive confirmation that enumerating particular rights does not deny other rights retained by the people, not as an independent Section 1983 cause

of action. He raised it in response to the conclusion that he had no right to use profanity in communications with university personnel. Oregon law likewise protects the Right retained by the People to write and speak freely on any subject, subject to responsibility for abuse. Or. Const. art. I, § 8.

The enforceable federal rights asserted here arise principally from the First Amendment and the Fourteenth Amendment's protections of Life, Liberty, and property. The Ninth Amendment reinforces, but does not independently establish, Appellant's contention that the absence of his chosen label—"Substantial Evidence Protection"—does not resolve whether the underlying liberty is protected.

**C. The panel's own First Amendment analysis demonstrates why a factual foundation matters here.**

The panel held that Appellant plausibly alleged protected political speech, adverse discipline, and retaliatory motivation. Mem. 3-6. It further held that PSU's stated rationale did not fit the categories discussed in *Mahanoy Area School District v. B.L.*, 594 U.S. 180, 187-88 (2021), and that being upset by a single email did not establish a permissible basis for punishment. Mem. 4. At the pleading stage, the Court could not accept PSU's assertion that the email disrupted employees' work. Mem. 5.

Those holdings support, rather than eliminate, Appellant's substantial-factual-foundation theory. When political expression is punished as disruptive, the State cannot treat officials' offense or a

conclusory assertion as proof of material disruption. The First Amendment right must appear on the constitutional side of the balance, and PSU must identify facts establishing a legally sufficient disruption or other justification. Otherwise, a disciplinary hearing merely formalizes viewpoint retaliation.

Part 1 states only that this Court has not imposed a particular evidentiary standard on public-school disciplinary proceedings. Mem. 2-3. That does not establish that no factual foundation or meaningful adjudication was required. Nor does it justify dismissal with prejudice of a claim asking what protection applies when discipline burdens First Amendment liberty. Appellant seeks damages against Jeffords individually under 42 U.S.C. § 1983 and prospective relief addressing the continuing disciplinary determination and registration restrictions. He separately asserted state-law claims against PSU. Those claims and remedies should not be collapsed into PSU's sovereign-immunity defense. The Court can resolve the overlooked procedural and anti-arbitrariness theories without deciding every preserved dispute about evidentiary burdens or state sovereignty.

**D. The mandate challenge was part of the anti-arbitrariness claim, not an invitation to resolve disputed medicine on rehearing.**

The amended complaint alleged that Appellant sought exemption from PSU's COVID-19 vaccination requirement and used "Mark of the Beast" to express his religious, moral, and political objection. It alleged

that the punished email challenged the mandate's legality, the emergency-use order or recently approved status and testing of available mRNA products as Appellant understood them, reported myocarditis risk, and whether vaccination was appropriate for him. Am. Compl. ¶¶ 46-60; Opening Br. 11-18, 33-36. These allegations supplied the speech's context; they did not ask the panel to decide disputed medical questions on rehearing.

Appellant expressly asserted this freedom of association theory in the written response PSU authorized in lieu of attendance: "By forcing students to wear masks, you've deprived us of our right to free association. We have a right to associate with people with COVID so we can get infected and infect others." The amended complaint and Opening Brief reproduced that statement. Am. Compl. ¶¶ 46-60; Opening Br. 13-14. The theory therefore was presented to PSU, pleaded below, and preserved on appeal; it is not new on rehearing. Appellant maintains that this was protected expressive and associational advocacy. His references to keeping gyms open to strengthen lung and heart health and reduce risk of death from heart attack caused by COVID pneumonia making your lungs too heavy to breath, and allowing willing participants to join voluntary workout-based natural-immunity or controlled-exposure groups collect rigorous data and facts to scientifically prove the most effective pandemic response method to reduce their risk death. The panel need not decide whether that public-health proposal was optimal. The relevant point is that his advocacy concerning association, masks, vaccination, natural immunity, and

personal medical decisions formed part of the political and religious speech PSU punished, and policy disagreement did not strip that speech of constitutional protection.

Appellant asserted that PSU burdened Life, Liberty, bodily autonomy, association, and continued enrollment without constitutionally sufficient justification. Cruzan v. Director, Missouri Department of Health recognizes a protected liberty interest in refusing unwanted medical treatment. 497 U.S. 261, 278 (1990). He further alleged that personal risk and benefit should be evaluated with a physician rather than resolved by university preference. The opening brief therefore asked what factual and procedural protection was required before PSU could enforce the mandate and expressly asserted "lack of Due Process for vaccine mandate authority." Opening Br. 62-63.

That preserved question does not require the panel to decide whether Appellant or PSU had the better medical assessment. The question is whether the constitutional theory was stated and, if not stated clearly enough, whether amendment should have been allowed. Appellant contends that PSU relied only on preventing transmission without disclosing the evidence, threshold, risk reduction of vaccines vs natural infection in PSU student and staff demographics, or individualized basis it considered sufficient to override his asserted liberties and reject his exemption. Disagreement over masks, distancing, vaccination, natural immunity, and individual risk did not convert his exemption request and policy criticism into punishable disruption.

Appellant also challenged ORS 352.087(1)(m), which permits specified university policies to have "the force of law" while requiring procedures that include an opportunity for appeal. Opening Br. 23, 57. That delegation did not answer whether PSU stayed within constitutional limits, meaningfully considered the exemption, or possessed facts sufficient to support the deprivation. Part 1 did not separately address that theory.

The panel's favorable First Amendment ruling confirms the point: Appellant could petition PSU and criticize a policy he believed threatened his Life and Liberty. The truth of every medical assertion does not determine whether that speech was protected. PSU could not rely at the pleading stage on officials' reaction or a conclusory assertion of disruption. Mem. 4-5.

## II. THE PANEL ALSO OVERLOOKED A DISTINCT PROCEDURAL DUE PROCESS THEORY

Appellant separately alleged that the manner in which PSU decided responsibility denied notice and a meaningful opportunity to answer the case against him. The amended complaint alleges that PSU charged him with disrupting university employees and invited him to a Zoom hearing. Am. Compl. paras. 51-53. When Appellant objected to the assigned hearing officer because of pronouns she/they's title that Appellant alleged indicated anti-conservative political bias, PSU stated that he could submit a written statement instead of attending. *Id.* para. 53. He alleges that he submitted the permitted statement, but PSU

nevertheless treated him as having failed to appear, found him responsible without presenting any evidence, and blocked registration resulting in a $20 fine for protected free speech with force of law. *Id.* paras. 54-55.

Appellant then appealed, identifying error in the conduct process and challenging punishment of his political speech in his religious vaccine mandate waiver petition email. *Id.* paras. 56-57. The appeal decision stated that Jeffords reviewed information from the student-conduct file. *Id.* para. 57. The opening brief asserted that Appellant was not provided the relevant conduct-hearing materials, was not told what evidence established an actual disruption, and lacked a meaningful opportunity to submit and test responsive evidence, cross examine his accuser and witnesses, and call witnesses to his defense. Opening Br. 14, 22, 36, 54-56. Its Issues Presented expressly identified lack of fair notice and lack of a quasi-judicial student-conduct hearing. Opening Br. 25.

The terminology in Appellant's pro se filings combined evidentiary burdens, substantive protection, and hearing procedures. But pro se pleadings must be judged by their substance and construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The procedural allegations should not disappear merely because Appellant also advocated a heightened evidentiary protection. Part of substantial due process is that the substance is addressed, not just the labels.

The panel recognized that public-school discipline may implicate

due process rights. Mem. 2 (citing *K.J. ex rel. Johnson v. Jackson*, 127 F.4th 1239, 1252 (9th Cir. 2025)). *Goss v. Lopez* requires notice of the charge, an explanation of the authorities' evidence, and an opportunity for the student to present his side. 419 U.S. 565, 579-81 (1975). *K.J.* reiterates that those requirements apply when public officials impose or extend discipline on new allegations or evidence. 127 F.4th at 1252-54. In the university setting, *Austin v. University of Oregon* likewise treats notice and a meaningful opportunity to be heard as the hallmarks of due process. 925 F.3d 1133, 1138-39 (9th Cir. 2019).

The availability of a Zoom meeting and written submission are relevant, but they do not resolve the claim on the pleadings. Appellant alleges that PSU offered the written statement as an alternative and then treated him as absent; relied on materials and an asserted disruption that were not disclosed in a manner he could answer; made no reviewable findings identifying what evidence satisfied even a preponderance standard; and resolved the appeal through Jeffords without curing those defects. Even if the Constitution does not prescribe a heightened burden for university discipline, the alleged absence of a meaningful adjudication, disclosed factual basis, and findings is an independent procedural claim. Whether Appellant can prove those allegations, a protected liberty or property interest, prejudice, and personal participation should be evaluated under the ordinary due process framework. Part 1 addressed only a claimed evidentiary standard and did not undertake that analysis under Federal and State Law and the PSU Student Code of Conduct.

## III. THE INDIVIDUAL ACTION AT LAW AND CONTINUING DECLARATORY RELIEF ARE DISTINCT FROM PSU'S SOVEREIGN-IMMUNITY DEFENSE

Section 1983 authorizes an action at law, suit in equity, or other proper proceeding against a person who, under color of state law, causes a federal Rights deprivation. Appellant sued Jeffords individually for damages based on her personal participation. The panel held that she was not entitled to qualified immunity at the pleading stage on the revived First Amendment claim. Mem. 6. That individual-capacity action is distinct from PSU's sovereign-immunity defense. If PSU fails the Kohn arm-of-state test on remand, its potential entity liability requires separate analysis; either way, PSU's asserted immunity does not extinguish the claim against Jeffords.

Appellant also seeks a declaration addressing a continuing controversy, not merely an advisory declaration that past conduct was unlawful. The expulsion, disciplinary record, and registration restrictions allegedly continue to impair his enrollment, career, and legal status. A focused amendment can identify the official who presently has authority to remove or correct those continuing consequences and request prospective relief against that official. See Ex parte Young, 209 U.S. 123 (1908). Appellant recognizes that Green v. Mansour, 474 U.S. 64, 68, 73 (1985), limits declarations concerned only with completed past violations; his proposed declaration instead concerns the present validity and enforcement of an allegedly unconstitutional disciplinary determination.

Appellant preserves his contention that the Oregon Tort Claims Act consented to adjudication of covered tort claims and that the Fourteenth Amendment displaced contrary state sovereignty as necessary to enforce its guarantees. He acknowledges that Hans v. Louisiana, 134 U.S. 1 (1890), and Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985), bind this Court, and preserves for Supreme Court review his textual objection to immunity extending beyond the Eleventh Amendment's words. Rehearing need not decide that issue. The panel already ordered the Kohn analysis; the remaining immunity dispute should not erase the separate individual-capacity action or properly pleaded prospective relief.

## IV. AT MINIMUM, THE DISPOSITION SHOULD PERMIT A FOCUSED AMENDMENT

If the amended complaint did not separate these theories with sufficient clarity, Appellant expressly requested leave to amend. The opening brief identified whether he should receive leave to cure any pleading defect and concluded by requesting permission to file a second amended complaint. Opening Br. 26, 42, 80-82. The July 23 disposition does not address that alternative request.

A self-represented plaintiff ordinarily should receive leave to amend unless it is absolutely clear that amendment would be futile. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). A focused amendment can separately allege: (1) the protected speech and retaliation; (2) the liberty and property interests affected by the

mandate and discipline; (3) the asserted lack of a sufficient factual foundation; (4) the notice, disclosure, exemption, response, and fact-finding procedures denied; (5) each defendant's participation; (6) causation and prejudice; (7) continuing records and holds, the official able to correct them, and prospective relief; and (8) any available Oregon constitutional theories and remedies. See K.J., 127 F.4th at 1255-56.

The panel declined to adjudicate Appellant's Oregon constitutional theories because they were raised for the first time on appeal. Mem. 2 n.1. Appellant does not ask the panel to decide those state law merits on rehearing, they serve as evidence that alleged deficiencies in his filings can be fixed. He asks only that the disposition not foreclose the district court from considering a Rule 15 motion on remand to plead Article I, Section 8's protection of expression and Article I, Section 20's equal-privileges theory based on facts already alleged, subject to the district Court's determination of a legally available remedy.

A focused amendment would also distinguish burdens of proof, substantial-evidence review, substantive/substantial due process, and quasi-judicial procedure, while alleging why severe discipline for protected speech required more than a conclusory disruption assertion. Because the panel remanded the related First Amendment claim, allowing the district Court to consider amendment would promote efficiency without disturbing the favorable holdings.

## CONCLUSION

Appellant respectfully requests rehearing limited to Part 1 and an amended disposition recognizing that his due process claim alleged more than selection of an evidentiary burden: it alleged no meaningful adjudication, disclosed factual basis, or reviewable findings, together with related procedural and anti-arbitrariness theories and continuing consequences. Alternatively, Appellant requests remand permitting him to seek leave to file a focused second amended complaint. The disposition should also clarify that declining to decide newly presented Oregon constitutional theories does not foreclose a Rule 15 motion on remand. All favorable portions of the July 23, 2026 disposition should remain unchanged.

Respectfully submitted and DATED August 4, 2026.

*s/ Chal Jamison McCollough*

**x**________________________________

Plaintiff-Appellant Chal Jamison McCollough
Self-represented
3170 W 14th Ave, Eugene OR, 97402
541-653-6966

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 24-7617

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

(●) Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 3673.
*(Petitions and responses must not exceed 4,200 words)*

**OR**

( ) In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Chal Jamison McCollough **Date** August 4, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*

428

FILED

JUL 23 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| Mr. CHAL JAMISON MCCOLLOUGH,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>PORTLAND STATE UNIVERSITY, c/o Ann Cudd; SUSAN JEFFORDS, of Portland State University,<br><br>Defendants - Appellees. | No. 24-7617<br><br>D.C. No.<br>3:23-cv-01582-AR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Submitted July 15, 2026**

Before: NGUYEN, OWENS, and LEE, Circuit Judges.

While a student enrolled at Portland State University (PSU) in 2021, Chal McCollough sought exemption from PSU's COVID-19 vaccination requirement via email. Using crude language and a variety of expletives in his email, he accused

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

PSU's policies of being unlawful and politically motivated. PSU officials referred McCollough for student disciplinary proceedings, which eventually resulted in his suspension and expulsion.

McCollough sued, bringing a variety of civil rights claims under federal and state law, including that PSU engaged in unlawful First Amendment retaliation and violated his due process rights under 42 U.S.C. § 1983.[1] The district court, adopting the findings and recommendations of the magistrate judge, dismissed the complaint, and McCollough now appeals pro se. We review de novo a district court's order dismissing a complaint for failure to state a claim. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (9th Cir. 2021). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.

1. Due process claims. While this court has recognized that students' due process rights may be implicated by public school disciplinary proceedings, *see K.J. by and through Johnson v. Jackson*, 127 F.4th 1239, 1252 (9th Cir. 2025), we have not imposed a particular evidentiary standard on those proceedings. Thus, the

---

[1] McCollough's opening brief asks this court to reverse two orders denying McCollough's request for the magistrate and district court judges to recuse themselves from his case. Because the recusal orders were issued after his claims were dismissed and McCollough did not file a notice of appeal, we do not consider the orders to be before this court. We also decline to consider McCollough's arguments under the Oregon Constitution or disparate impact claims under Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act, which he raises for the first time on appeal.

district court properly dismissed McCollough's claim that PSU's student conduct process violated his Fourteenth Amendment due process rights because the disciplinary hearing allegedly failed to impose a "preponderance" or "substantial evidence standard."

2. Sovereign immunity. The district court erred in adopting the magistrate judge's conclusion that PSU is immune from Kane's other Section 1983 claim for First Amendment retaliation. The magistrate judge failed to apply the controlling test established in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), in which the Ninth Circuit updated its approach to analyzing whether an entity qualifies as an arm of the state. Instead of applying *Kohn*, the magistrate judge cited decades-old district court cases which state that Oregon's universities should be considered arms of the state. We reverse and remand for application of the *Kohn* test.

3. First Amendment retaliation claim. The district court also erred in concluding that McCollough failed to plead a plausible First Amendment retaliation claim.

First, the district court erred in concluding that McCollough failed to establish his speech merited First Amendment protection. Though it is true that public schools may occasionally regulate student speech, the Supreme Court has repeatedly cautioned that such regulations only pass constitutional muster when there exists a

significant state interest to do so. In *Mahanoy Area Sch. Dist. v. B.L. by and through Levy*, 594 U.S. 180 (2021), the Court enumerated four categories of circumstances that justify school regulation of student speech: (1) lewd, sexually explicit content shared with minors in a school assembly; (2) speech promoting illegal drug use on school trip; (3) speech that may imply endorsement of the school; and (4) speech which "materially disrupts classwork" or invades others' rights). 594 U.S. at 187-88.

McCollough's language was crass and disrespectful. But even crude language used to communicate a political point may merit First Amendment protection. As the Supreme Court famously held, even a jacket emblazoned with "Fuck the Draft" was protected under the First Amendment. *See Cohen v. California*, 403 U.S. 15, 18 (1971). Further, PSU's sole rationale for initiating the disciplinary proceedings—that a single email was upsetting to school officials—fits none of *Mahanoy*'s four categories.

And while the Ninth Circuit has held that speech which occurs in a nonpublic forum within the school setting may occasionally be regulated by a university, the regulation must be both "reasonable and viewpoint neutral." *See O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (emphasis added). But if PSU disciplined McCollough for his anti-vaccine opinions, no matter how intemperate the language—as alleged in the complaint—then PSU's actions would not be viewpoint

neutral. At least at the pleading stage, McCollough has sufficiently shown that his speech merits First Amendment protection.

Second, the district court wrongly concluded that McCollough failed to plead the "motivation" element of a First Amendment retaliation claim—*i.e.*, that the school's adverse action against him was performed for the purpose of limiting his speech—because McCollough did not plead that the individual defendant official, Jeffords, took personal offense to his email. McCollough alleges that PSU sent him a notice stating that he was being disciplined because of his profane language and that such insults "disrupted the work of the employees at the University's Student Health and Counseling Center." Jeffords then facilitated the disciplinary proceedings.

But at the motion to dismiss stage, we cannot accept PSU's assertion that his email disrupted the work of its employees or that it acted because of that purported reason. McCollough has met his burden to show that his speech itself—with its heated rhetoric on a controversial political issue—could have been a "substantial or motivating factor" for PSU's discipline. *See Reges v. Cause*, 175 F.4th 1014, 1029 (9th Cir. 2026); *see also Koala v. Khosla*, 931 F.3d 887, 905-06 (9th Cir. 2019) (finding plaintiff proved retaliatory motive by alleging nexus between university officials' public disapproval of plaintiff's publication and the publication's defunding by other university officials).

4. Qualified immunity. The district court's rationale for granting Jeffords qualified immunity was the same conclusion that we reject above—*i.e.*, the finding that there exists no clearly established right to use profane or crass language in nonpublic communications in the school setting. Accordingly, we disagree that Jeffords is entitled to qualified immunity at this stage of proceedings.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings.